```
                                                        USDC SDNY
                                                        DOCUMENT
UNITED STATES DISTRICT COURT                            ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK                           DOC #:
------------------------------------------------------X DATE FILED:  9/27/16
WILLIAM OROZCO, JEFFREY FITE, and                  :
ALSENY CAMARA                                      :
                                                   :
                              Plaintiffs,          :    15-CV-8226 (VEC)
                                                   :
             -against-                             :    MEMORANDUM
                                                   :    OPINION & ORDER
FRESH DIRECT, LLC, FRESH DIRECT                    :
HOLDINGS, INC., U.T.F. TRUCKING, INC.,             :
JASON ACKERMAN, and DAVID                          :
MCINERNEY,                                         :
                                                   :
                                                   :
                              Defendants.          :
------------------------------------------------------X
```

VALERIE CAPRONI, United States District Judge:

Plaintiffs William Orozco, Jeffrey Fite, and Alseny Camara, employed as delivery workers by U.T.F. Trucking, Inc. ("U.T.F."), which is wholly owned by Fresh Direct Holdings, Inc. and an affiliate of Fresh Direct, LLC ("Fresh Direct"), bring this action against U.T.F., Fresh Direct, Fresh Direct Holdings, and corporate officers Jason Ackerman and David McInerney, alleging violations of New York Labor Law ("NYLL") § 196-d and the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq*.  Plaintiffs allege that a delivery fee charged to Fresh Direct customers was a gratuity that should have been paid to them and that should have been included in calculating their federal and state overtime rate of pay.  Defendants have moved pursuant to Federal Rule of Civil Procedure 56 for summary judgment, or in the alternative pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint for failure to state a claim.  For the following reasons, Defendants' motion is GRANTED pursuant to Rule 12(b)(6).

## BACKGROUND[1]

Fresh Direct is an online retailer that sells and delivers groceries.[2]  Compl. ¶ 26 (Dkt. 1). U.T.F. employs Plaintiffs as delivery workers.[3]  *Id.* ¶¶ 8-10, 36.  Fresh Direct charges a delivery fee on all orders.  *Id.* ¶ 40.  The fee is $5.99 for deliveries within New York City's five boroughs, $6.99 in other areas of New York State, and $15.99 for seasonal deliveries to the Hamptons.  *Id.* Customers may purchase a "Deliverypass" to receive unlimited deliveries for a fixed one-time fee.  Defs. Mem. 3 (Dkt. 23) (citing Fresh Direct website as it existed on or around March 13, 2014).  Customers can also get a $2.00 discount off the delivery fee by scheduling deliveries during off-peak hours.  *Id.* (citing Fresh Direct website as it existed on or around March 13, 2014).

The bill to the customer segregates the delivery fee from the fuel charge, another delivery-related charge.  *Id.* ¶¶ 41, 43.  Defendants retain the entire delivery fee and do not distribute any portion of the fee to drivers or delivery workers.  *Id.* ¶ 44.  Fresh Direct did not

---

[1]  Defendants move for summary judgment or in the alternative to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court treats Defendants' motion as a motion to dismiss.  Accordingly, the Court applies the legal standard provided by Rule 12(b)(6), assumes the well-pled factual allegations of the Complaint to be true, and excludes facts extrinsic to the Complaint introduced in Defendants' motion.  Because, however, the Complaint relies explicitly on Fresh Direct's website, *see* Compl. ¶¶ 42, 46, the Court will consider the totality of the website as of the relevant date.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (on Rule 12(b)(6) motion, a court may consider, *inter alia*, "statements or documents incorporated into the complaint by reference" and "documents possessed by or known to the plaintiff and upon which it relied in bringing the suit" (citation omitted)); *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 694 n.3 (S.D.N.Y. 2009) (holding that court may consider website on a motion to dismiss when the complaint incorporates it by reference (citations omitted)).

[2]  Fresh Direct Holdings wholly owns Fresh Direct and U.T.F.  Compl. ¶ 27.  U.T.F.'s primary business is to transport Fresh Direct's groceries.  *Id.* ¶ 35.  Delivery workers wear Fresh Direct uniforms and identify themselves as Fresh Direct employees; the U.T.F. trucks bear a Fresh Direct logo.  *Id.* ¶¶ 29-30.  Plaintiffs' theory is that U.T.F. and Fresh Direct are joint employers for purposes of FLSA and NYLL.  *Id.* ¶¶ 37-39.

[3]  Orozco has been a delivery helper since 2006, Fite has been a delivery driver since 2009, and Camara has been a delivery helper since 2008.  *Id.* ¶¶ 8-10.  Plaintiffs are paid on an hourly basis, and when working overtime, Plaintiffs are paid one and a half times their regular rates of pay.  *Id.* ¶¶ 70-71, 89-90, 114-15.

explain to customers the purpose of the delivery fee.[4]  *Id.* ¶ 42.  Plaintiffs allege that as of March 13, 2014, Fresh Direct's website would have led a reasonable customer to believe that the delivery fee was a gratuity.[5]  *Id.* ¶ 46.  As of March 13, 2014, the website informed customers:

> [A]t this time we do not have the technology to add tips to your order total.  If you feel that you've received exceptional service, please feel free to tip your delivery team. . . . You are under no obligation to tip but have the option of providing a nominal tip if you feel you've received exceptional service.  FreshDirect delivery personnel are not permitted to solicit tips under any circumstances.

Declaration of Teepo Riaz, Esq. ("Riaz Decl.") ¶ 10 (Dkt. 25).

Customers purportedly told Plaintiffs "on many occasions" that they thought the delivery fee was a gratuity for Plaintiffs.  *Id.* ¶ 48.  According to Plaintiffs, the named and opt-in plaintiffs in *Owens et al. v. Fresh Direct LLC, et al.*, No. 14-cv-1909 (VEC), an identical lawsuit for which a class action settlement was approved and from which settlement Plaintiffs opted-out,[6] also alleged that customers told them on numerous occasions that they believed the delivery fee was a gratuity for the Fresh Direct delivery workers.  *Id.* ¶¶ 50-51.  Plaintiffs hardly ever received gratuities.  *Id.* ¶ 52.  Accordingly, Plaintiffs allege that customers reasonably believed the delivery fee was a gratuity, that Defendants thus retained gratuities belonging to Plaintiffs, and

---

[4]  Defendants claim the following provision, which appeared on the Fresh Direct website as it existed on or around March 13, 2014, on the webpage that set forth the delivery fee amounts by location, "affirmatively explain[ed] the purpose of the delivery fee by detailing the process for delivery of fresh food:"

> Fresh foods need extra care in handling, and we do all the right things to make sure your food gets to you in top shape . . . We put the boxes straight into our own FreshDirect refrigerator/freezer trucks, keeping everything cool and dry until it reaches you.

Defs. Mem. 19-20 (citing webpage as it existed on or around March 13, 2014).  The Court, however, does not read this statement to explain the purpose of the delivery fee.

[5]  In their opposition to Defendants' motion, Plaintiffs concede that their claims only cover the time period from October 19, 2009 (six years prior to the filing of the Complaint) to July 2014 (when Fresh Direct modified its website to state expressly that the delivery fee is not a gratuity for the delivery staff).  Pls. Opp. 1 n.1 (Dkt. 27).  Plaintiffs concede that once Fresh Direct modified its website to include express language informing customers that the delivery fee is not a gratuity for delivery employees, Defendants were in compliance with NYLL § 196-d.  *Id.*

[6]  The class action settlement in *Owens* was approved on October 30, 2015, and Plaintiffs started this lawsuit on October 19, 2015.

that Defendants failed to include that gratuity in Plaintiffs' rates of pay when calculating Plaintiffs' overtime rate.  *Id.* ¶¶ 52, 53, 72, 91, 116.

## DISCUSSION

**I.     Legal Standard**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief."  *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).  In reviewing a motion to dismiss under Rule 12(b)(6), courts "'accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.'" *Meyer v. JinkoSolar Holdings Co., Ltd.*, 761 F.3d 245, 249 (2d Cir. 2014) (quoting *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 119 (2d Cir. 2013) (alterations omitted)).  "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555).  "[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level."  *Keiler v. Harlequin Enters.*, Ltd., 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted).

Plaintiffs' FLSA and NYLL overtime compensation claims hinge on Plaintiffs' NYLL § 196-d claim for the unlawful retention of gratuities.  NYLL § 196-d provides, in relevant part, that "[n]o employer . . . shall . . . retain any part of a gratuity or of any charge purported to be a gratuity for an employee." N.Y. Lab. Law § 196-d (McKinney 2016).  Plaintiffs allege that Defendants owe them additional overtime compensation under the FLSA and NYLL because the delivery fee was a gratuity and Defendants did not include the delivery fee in Plaintiffs' rate of

pay when calculating overtime compensation. Accordingly, Plaintiffs can only prevail on their overtime claims if they prevail on the premise of their claim: namely that pursuant to NYLL § 196-d, the delivery fee was a gratuity that was illegally retained by Defendants. Just as the parties did in their briefing submitted to the Court, this opinion will focus on whether Plaintiffs have pled a viable claim under § 196-d of the NYLL.

## II. Plaintiffs Fail to State a Claim under NYLL § 196-d Because Plaintiffs Have Failed to Plead Sufficient Facts to Allege Adequately that a Reasonable Customer Would Expect the Delivery Fee to Be a Gratuity

Under NYLL § 196-d, gratuities "can include mandatory charges when it is shown that employers represented or allowed their customers to believe that the charges were in fact gratuities for their employees." *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 81 (2008). Moreover, "the standard under which a mandatory charge or fee is purported to be a gratuity should be weighed against the expectation of the reasonable customer . . . ." *Id.* at 79; *see also Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 330 (S.D.N.Y. 2010) ("Under the *World Yacht* standard, '[w]hether a charge 'purports to be a gratuity' is measured by whether a reasonable patron would understand that a service charge was being collected in lieu of a gratuity.'" (quoting *Krebs v. Canyon Club, Inc.*, 880 N.Y.S.2d 873, 874 (Sup. Ct. 2009))). "The case law in New York has construed § 196-d to require a holistic assessment of how a reasonable customer would understand, in context, a particular surcharge . . . ." *Maldonado v. BTB Events & Celebrations, Inc.*, 990 F. Supp. 2d 382, 389 (S.D.N.Y. 2013).

Plaintiffs argue that a March 11, 2010 opinion letter from the New York State Department of Labor ("NYSDOL") and NYSDOL regulations effective January 1, 2011 ("Hospitality Industry Wage Order"), N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.18, apply in this case. Pls. Opp. 21-22. Both the opinion letter and the regulations address when a mandatory charge constitutes a gratuity under § 196-d. *See* N.Y. Comp. Codes R. & Regs. tit.

12, § 146-2.18; N.Y. State Dep't of Labor, Op. Letter (Mar. 11, 2010), *available at* https://labor.ny.gov/legal/counsel-opinion-letters.shtm. The 2010 opinion letter, which addressed mandatory banquet service fees, provides a non-exhaustive list of factors to consider when determining whether a reasonable customer would believe a mandatory charge is a gratuity, including:

> (1) the font size and prominence of the notice; (2) the label used to denote the charge and whether such a label would confuse patrons (noting that the label "administrative fee" is clearer than "service charge"); (3) whether the purpose of the charge and manner in which the charge is calculated are described on the bill; (4) whether the notice discloses the portion of the charge that is being distributed to the service staff and informs that[sic] patrons to leave an additional payment as a tip; and (5) whether there exists a separate line for gratuity.

*Maldonado*, 990 F. Supp. 2d at 390 (citing N.Y. State Dep't of Labor, Op. Letter (Mar. 11, 2010), *available at* https://labor.ny.gov/legal/counsel-opinion-letters.shtm). The Hospitality Industry Wage Order creates "a rebuttable presumption that any charge in addition to charges for food, beverage, lodging, and other specified materials or services, including but not limited to any charge for 'service' or 'food service,' is a charge purported[sic] to be a gratuity." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.18. Defendants maintain that the opinion letter and the Hospitality Industry Wage Order do not apply here because they exclusively govern the hospitality industry, of which Fresh Direct is not a member. Defs. Reply 7 (Dkt. 30).

      The Hospitality Industry Wage Order is clearly directed specifically to the hospitality industry. *See Cordero v. New York Inst. of Tech.*, No. 12-CV-3208 (SJF) (GRB), 2013 WL 3189189, at *1 (E.D.N.Y. June 20, 2013) ("The New York Department of Labor has promulgated additional regulations that are specifically applicable to the 'hospitality industry . . . .'"). Plaintiffs have not alleged any facts or made any arguments to suggest that Defendants are part of the hospitality industry, which includes restaurants and hotels as defined in N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.1.

To the Court's knowledge, *Hart v. Rick's Cabaret Int'l, Inc.*, 60 F. Supp. 3d 447 (S.D.N.Y.), *motion to certify appeal denied*, 73 F. Supp. 3d 382 (S.D.N.Y. 2014), is the only case in which the opinion letter and the Hospitality Industry Wage Order have been applied outside of the hospitality industry. As an alternative basis for the Court's decision that "fees" paid directly to exotic dancers were reasonably believed by customers to be tips for the dancers, *Hart*, without citing to any authority, applied the rebuttable presumption required by the Hospitality Industry Wage Order to exotic dancers. In doing so, the Court noted that the Order was "consistent with the case law . . . [and] reflect[ed] an overall understanding of NYLL § 196-d." 60 F. Supp. 3d at 461; *see also id.* at 460 ("Although issued in the context of wait-staff working in banquets, the letter is not limited to that context.").

This Court disagrees with *Hart* relative to the applicability of the Hospitality Industry Wage Order beyond the hospitality industry. Not all service employment is the same; the customs governing services provided by restaurants, hotels, mechanics, computer technicians, plumbers, exotic dancers, and gardeners (to name just a few) may be different, and a law directed at restaurants and hotels (service providers specifically defined by the Hospitality Wage Order) cannot automatically be expanded to regulate every other service industry. This is particularly the case because the Department of Labor's opinion letter was "base[d] . . . on an evaluation of inferences to be drawn from the contract drafting and customer relations practices in [the New York banquet] industry," *Spicer*, 269 F.R.D. at 331, undercutting any notion that the Department of Labor intended it to be applicable globally to all service employers.

All that being said, because New York law requires a holistic assessment in order to determine whether a reasonable customer would expect a mandatory charge to be a gratuity, the factors set forth in the opinion letter are analytically useful in evaluating the expectation of a

reasonable customer. Even applying those factors, however, Plaintiffs' allegations, taken as true, do not plausibly allege that the delivery fee is a gratuity under § 196-d.

Plaintiffs have not plausibly alleged that a reasonable customer would have understood Fresh Direct's delivery fee to have been a gratuity. Plaintiffs allege generally that "Fresh Direct misled its customers into believing the 'delivery charge' was a gratuity," Compl. ¶ 47, and that the website "had the reasonable customer believe the 'delivery charge' was a gratuity," *id.* ¶ 46. But those allegations are conclusory. The only non-conclusory allegations Plaintiffs make to support their claim that a reasonable customer would have understood the delivery fee to have been a gratuity are: (1) the website "did not explain . . . the purpose of the delivery charge or that [Fresh Direct] was retaining some or all of the charge," *id.* ¶ 42; (2) the bill separates the delivery fee from the fuel charge, *id.* ¶¶ 41, 43; (3) the delivery fee was within the range of what a reasonable customer would pay as a tip, *id.* ¶ 45; (4) the plaintiffs in *Owens* and the Plaintiffs in this case "were told by customers on many occasions that the customers thought the 'delivery charge' was a gratuity," *id.* ¶¶ 48, 50-51; and (5) Plaintiffs rarely received tips, *id.* ¶ 52. Plaintiffs do not allege *any* details as to how many times or how many customers told Plaintiffs or the *Owens* plaintiffs that they thought the delivery fee was a tip or in what context those conversations occurred. Given the fixed rate of the fee, which did not vary based on the dollar value of groceries being delivered, the allegation that the delivery fee was within the range of what a reasonable customer would pay as a tip strains credibility.[7] In addition, the fact that the delivery fee was a fixed amount regardless of whether groceries were delivered to an apartment in an elevator building or to the fifth floor of a walk-up challenges the plausibility of Plaintiffs'

---

[7] If the customer ordered $20.00 worth of groceries, the $5.99 delivery fee would amount to a very generous 29.95% gratuity, whereas if the customer ordered $200 worth of groceries, the $5.99 delivery fee would amount to a rather Scrooge-like 2.99% gratuity.

8

allegation that the delivery fee was within the range of what a reasonable customer would pay as a tip.

But, even accepting these factual allegations as true, Plaintiffs have not plausibly alleged that a *reasonable* customer would have understood the delivery fee to have been a gratuity, taking into account common sense and the disclosure on Fresh Direct's website. As explained, *see supra* note 1, the website is not only incorporated by reference in the Complaint but is at the center of Plaintiffs' allegations, so the Court may consider the website in its totality as it existed during the relevant time period in resolving Defendants' motion to dismiss. *Atl. Recording Corp.*, 603 F. Supp. 2d at 694 n.3 (S.D.N.Y. 2009) (citing *Gorran v. Atkins Nutritionals, Inc.*, 464 F. Supp. 2d 315, 319 (S.D.N.Y. 2006), *aff'd,* 279 F. App'x 40 (2d Cir. 2008); *Knievel v. ESPN, Inc.*, 223 F. Supp. 2d 1173, 1176 (D. Mont. 2002), *aff'd sub nom. Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005)).[8]

Fresh Direct clearly and unambiguously informed its customers in the FAQ section of its website, in reasonably-sized print, that Fresh Direct did "not have the technology to add tips to [a customer's] order total" and that customers should "please feel free to tip [their] delivery team." Riaz Decl. ¶ 10.[9] Another part of the FAQ section of the website informed customers at least as

---

[8]  *See also Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 298 (E.D.N.Y. 2014) (considering website on motion to dismiss because the complaint incorporated it by reference); *C.M. v. Fletcher Allen Health Care, Inc.*, No. 5:12-CV-108, 2013 WL 4453754, at *3 n.1 (D. Vt. Apr. 30, 2013) (same); *Perez v. Ahlstrom Corp.*, No. CIV.A. 10-CV-1299, 2011 WL 2533801, at *2 (D. Conn. June 27, 2011) (taking judicial notice of a website in resolving a motion to dismiss).

[9]  Because Plaintiffs incorporate by reference into their Complaint the Fresh Direct website as it existed prior to July 2014, the Court reviewed the Fresh Direct website through the Way Back Machine archive. Based on its review of the website through the Way Back Machine, the Court found that this provision, quoted in the Riaz Declaration and cited *supra* at page 3, was located on the FAQ webpage in reasonably sized print as of at least July 22, 2013. *Frequently Asked Questions*, FRESHDIRECT (July 22, 2013), https://web.archive.org/web/20130722102917/http://www.freshdirect.com/help/faq_home.jsp?page=delivery_feedback. By separate letter submitted at the Court's request, Defendants confirmed that this language was included on the FAQ webpage during the relevant time period.  Letter from Defendants 1 (Sept. 26, 2016) (Dkt. 38).

of July 22, 2013, in reasonably-sized print that "[y]ou are under no obligation to tip but have the option of providing a nominal tip if you feel that you've received exceptional service. FreshDirect personnel are not permitted to solicit tips under any circumstances."[10] In addition, at least as of October 2, 2009, the web page setting forth the schedule of delivery fees informed customers, in reasonably-sized print, "You are under no obligation to tip but have the option of providing a nominal tip if you feel that you've received exceptional service."[11] Moreover, the fact that Fresh Direct gave its customers the option of receiving a $2.00 discount on the delivery fee by scheduling deliveries during off-peak hours, *see* Defs. Mem. 3 (citing Fresh Direct website as it existed on or around March 13, 2014), also cuts against the plausibility of Plaintiffs' allegation that a reasonable customer would have expected the delivery fee to have been a tip—no reasonable customer would think that a mandatory tip could be reduced merely because the delivery was made during Fresh Direct's off-peak hours.[12]

The delivery fee at issue is analogous to a delivery fee paid at brick-and-mortar grocery stores; in those instances, customers who want their groceries delivered pay a delivery fee at checkout and may choose to tip the delivery worker once the groceries are delivered, taking into account the number of grocery bags and the difficulty of delivering them (e.g., inclement weather or several flights of stairs). Just as customers of a brick-and-mortar store pay at the time

---

[10]  *Frequently Asked Questions*, FRESHDIRECT (July 22, 2013), https://web.archive.org/web/2013072210 5219/http://www.freshdirect.com/help/faq_home.jsp?page=home_delivery; *see also* Letter from Defendants 1 (Sept. 26, 2016).

[11]  *About Fresh Direct Home Delivery*, FRESHDIRECT (Oct. 2, 2009), https://web.archive.org/web/20091 002233151/http://www.freshdirect.com/help/delivery_info.jsp?siteAccessPage=delivery&successPage=/index.jsp; *see also* Letter from Defendants 1 (Sept. 26, 2016).

[12]  Defendants argue that because customers could pay a one-time fee for unlimited deliveries by purchasing "Deliverypass," a reasonable customer could not have understood the delivery fee to have been a gratuity. Defs. Mem. 19. Because, however, it is unclear whether customers would have likely known about "Deliverpass," the Court does not consider this fact in determining whether Plaintiffs plausibly alleged, in light of the website as a whole, that a reasonable customer would have expected the fee to have been a tip.

of checkout a delivery fee that is not a tip, so, too, do Fresh Direct customers.[13]  That some customers may have told Plaintiffs they believed the delivery fee was a tip does not support the allegation that a reasonable customer would hold that belief—particularly in the absence of any facts putting those alleged customer statements in context.  Plaintiffs' other factual allegations, enumerated above, are factors to be considered in determining whether Plaintiffs have plausibly alleged that a reasonable customer would have expected the delivery fee to have been a gratuity, but they do not amount to a plausible allegation that a reasonable customer would have expected the delivery fee to have been a tip.

Although the parties spent much time parsing the disclosures on Fresh Direct's website, the Court would be inclined to find that no reasonable customer would have thought the delivery fee was a mandatory gratuity even if the website had been entirely silent.  But in light of the explicit disclosures, and given the absence of factual allegations that lend credence to the Plaintiffs' allegation that reasonable customers believed the delivery fee was a gratuity, Plaintiffs have not plausibly alleged a violation of NYLL § 196-d.  Because a violation of § 196-d is the lynchpin of Plaintiffs' Complaint, they have failed to state a claim on which relief can be granted.

## CONCLUSION

For the foregoing reasons, Defendants' motion is GRANTED.  The Clerk of Court is respectfully directed to close docket entry twenty-two and to terminate the case.

**SO ORDERED.**

Date: September 27, 2016
New York, New York

_____
**VALERIE CAPRONI**
**United States District Judge**

---

[13]  Other analogues would include delivery fees associated with the delivery of furniture, appliances, or flowers.  In no instance would a reasonable customer believe that the fee paid for delivery of those items is a mandatory gratuity for the delivery people.